05-1305-cv
Colavito v. N.Y. Organ Donor Network

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2005

(Argued: October 18, 2005    Question Certified to the New York Court of Appeals: February 23, 2006    Decided: May 21, 2007)

Docket No. 05-1305-cv

-------------------------------------

PATRICIA COLAVITO, as personal representative of Robert Colavito, Deceased,

Plaintiff-Appellant,

- v -

NEW YORK ORGAN DONOR NETWORK, INC., ROB KOCHIK, SPENCER HERTZEL, GOOD SAMARITAN HOSPITAL MEDICAL CENTER, DOE, I and II, M.D. DR.,

Defendants-Appellees.

-------------------------------------

Before:    JACOBS, Chief Judge, CABRANES, and SACK, Circuit Judges.

In Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 58, 860 N.E.2d 713, 722-23, 827 N.Y.S.2d 96, 105-06 (2006), the New York Court of Appeals answered a question that we had certified to it in Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 232-33 (2d Cir. 2006), as to whether the intended recipient of an organ donation can bring a private cause of action for common law conversion or under the New York Public Health Law if he does not receive the organ.  In light of the Court of Appeals' response, summary judgment granted by the

district court (Dora L. Irizarry, Judge) in favor of all of the defendants is:

Affirmed.

Denise Winter Luparello, Hicksville, NY, for Plaintiff-Appellant Patricia Colavito, as personal representative of Robert Colavito, Deceased.

Richard E. Lerner, Wilson, Elser, Moskowitz, Edelman & Dicker P.C., New York, NY, for Defendants-Appellees New York Organ Donor Network, Inc., Robert Kochik, and Spencer Hertzel.

SACK, Circuit Judge.

The plaintiff's decedent, Robert Colavito ("Colavito"), suffering from grave kidney disease, was the intended recipient of two kidneys from the body of his late close friend, Peter Lucia. The New York Organ Donor Network ("NYODN") sent one of Lucia's kidneys to Florida, where Colavito resided. But contrary to the wishes of the Lucia family, the NYODN designated the other kidney for another recipient before it was known whether the first one could be successfully transplanted to Colavito. When Colavito's doctor discovered that the kidney sent to Florida was damaged and therefore incapable of being transplanted successfully, he tried to obtain the second Lucia kidney from NYODN. That one, however, was by then in the process of being implanted in the other patient. Colavito, thinking that he had an enforceable right to the second kidney, brought suit against the defendants for fraud, conversion, and violation of New York

2

Public Health Law Articles, 43 and 43-A, in the United States District Court for the Eastern District of New York.

The district court (Dora L. Irizarry, Judge) granted summary judgment to the defendants on the merits of Colavito's fraud claim. Colavito v. N.Y. Organ Donor Network, Inc., 356 F. Supp. 2d 237, 241 (E.D.N.Y. 2005) ("Colavito I"). It also concluded that a public policy against recognizing property rights in human corpses barred Colavito's attempt to state a cause of action for common law conversion or under the New York Public Health Law, Articles 43 and 43-A. Id. at 241-47.

Colavito appealed to this Court. We affirmed with respect to the fraud claim, but certified to the New York Court of Appeals questions as to whether, under New York law, Colavito could maintain the causes of action for conversion or pursuant to the New York Public Health Law. Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 232-33 (2d Cir. 2006) ("Colavito II"). Specifically, we asked

> (1) Do the applicable provisions of the New York Public Health Law vest the intended recipient of a directed organ donation with rights that can be vindicated in a private party's lawsuit sounding in the common law tort of conversion or through a private right of action inferred from the New York Public Health Law? (2) Does New York Public Health Law immunize either negligent or grossly negligent misconduct? (3) If a donee can bring a private action to enforce the rights referred to in question 1, may the plaintiff recover nominal or punitive damages without demonstrating pecuniary loss or other actual injury?

Id. at 233.

The New York Court of Appeals accepted the certified questions. See Colavito v. N.Y. Organ Donor Network, Inc., 6 N.Y.3d 820, 846 N.E.2d 467, 813 N.Y.S.2d 37 (2006).[1] In its subsequent response to the questions, Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 58, 860 N.E.2d 713, 722-23, 827 N.Y.S.2d 96, 105-06 (2006) ("Colavito III"), the Court concluded that although the intended recipient of a donated organ might have a common law right to it under New York law, no such right exists for the "specified donee of an incompatible kidney." Id. at 53, 860 N.E.2d at 719, 827 N.Y.S.2d at 102 (emphasis added). The court also decided that whether or not a private cause of action exists under the New York Public Health Law for the disappointed intended recipients of organ donations, it is available only to those who fall within the statutory term "donee," which the court read the statute to "define[] as someone who needs the donated organ." Id. at 57, 860 N.E.2d at 722, 827 N.Y.S.2d at 105. The court concluded that inasmuch as Colavito could gain no medical benefit from the organs in question, he did not "need" them and therefore was not covered by the Act. Id.

The Court, "under the circumstances of this case," decided certified question no. 1 -- "Do the applicable provisions of the New York Public Health Law vest the intended recipient of

_____

[1] Colavito died between our decision certifying questions to the New York Court of Appeals and that court's resolution of them. His widow, Patricia Colavito, has been substituted as his personal representative for purposes of this litigation pursuant to Fed. R. App. P. 43(a)(1).

4

a directed organ donation with rights that can be vindicated in a private party's lawsuit sounding in the common law tort of conversion or through a private right of action inferred from the New York Public Health Law?" -- in the negative.  The Court concluded that in light of its answer to question no. 1, it was not required to answer questions no. 2 -- "Does New York Public Health Law immunize either negligent or grossly negligent misconduct?" -- or no. 3 -- "If a donee can bring a private action to enforce the rights referred to in question 1, may the plaintiff recover nominal or punitive damages without demonstrating pecuniary loss or other actual injury?"  Id. ("[U]nder the circumstances of this case, certified question No. 1 should be answered in the negative, and certified question Nos. 2 and 3 not answered as academic.").

This leaves us a single further question for resolution.  The Court of Appeals, as a basis both for answering our first question and deciding that the other two questions need not be addressed, assumed -- understandably, in light of the facts and the language of our prior opinion -- that Lucia's kidneys were incompatible with Colavito's immune system, thus preventing the organs from being successfully transplanted to Colavito.  That assumption underlies the Court of Appeals' conclusion that Colavito had no common law property right in the incompatible kidney (common law conversion) and did not "need" it (New York Public Health Law).  But neither the district court in Colavito I, nor we in Colavito II, ever actually decided whether

5

there was a "genuine issue" of "material fact," Fed. R. Civ. P. 56(c), that would require a trial as to whether Lucia's kidneys and Colavito's immune system were compatible. See Colavito I, 356 F. Supp. 2d at 240; Colavito II, 438 F.3d at 223. Colavito himself refused to concede that a successful transplant was impossible. See Colavito II, 438 F.3d at 223 ("Although he will not concede the point, the evidence strongly suggests that neither of Peter Lucia's kidneys was, it turned out, suitable for implantation in Colavito's body."). We cannot decide the propriety of the district court's grant of the defendants' motion for summary judgment without determining whether compatibility remains a genuine issue of material fact in this case.

Ordinarily, we "will not review an issue the district court did not decide." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 88 (2d Cir. 1996) (citing Singleton v. Wulff, 428 U.S. 106, 120-21 (1976)). However, "whether we do so or not is a matter within our discretion." Id.

We think this is an appropriate case in which to exercise our discretion to decide this issue in the first instance. Colavito's contention throughout has been that compatibility is immaterial. See Colavito I, 356 F. Supp. 2d at 240 (recognizing that Colavito "does not outright dispute [compatibility] but instead argues that incompatibility has no bearing on the fact that defendants misappropriated the second kidney"); Colavito III, 8 N.Y.3d at 48, 860 N.E.2d at 716, 827 N.Y.S.2d at 99 (stating that Colavito maintains "that

6

incompatibility is irrelevant to his claim").  We have nonetheless noted that "the evidence strongly suggests that . . . the Lucia kidneys were . . . useless to" Colavito.  Colavito II, 438 F.3d at 223.  Indeed, there is ample evidence to that effect.  See, e.g., Burke Dep. 7:22-12:7, May 10, 2004; Gaston Aff. ¶¶ 6-10, May 13, 2004.  At the same time, Colavito himself presented no evidence to the district court that would have raised a genuine issue with respect to compatibility.  The notion that Lucia's second kidney might have been successfully transplanted to Colavito is, on the evidence in the district court record, speculative at best.  A party may not defeat a Rule 56 motion based on conjecture alone.  See McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).

Because we conclude as a matter of law that Colavito could not have derived a medical benefit from the organ and did not "need" it, we also conclude that in light of the New York Court of Appeals' answer to our first certified question, he had no cause of action under either the New York common law of conversion or the New York Public Health Law.  The defendants were therefore entitled to summary judgment.[2]

---

[2] Chief Judge Jacobs, who subscribes to this analysis, adheres to the view (expressed in his dissent from the certification opinion) that Colavito could not in any event have had a medical "need" under the statute for both of Lucia's kidneys, and that the defendants therefore had no duty to hold the second (or transport it to Colavito) to hedge the risk that the first would be damaged or incompatible.  See Colavito II, 438 F.3d at 234.

Accordingly, we affirm the district court's grant of summary judgment to the defendants on all of Colavito's claims.