■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GODFREY MOLEMOHI, Appellant. [48 NYS3d 350]—

Judgment, Supreme Court, New York County (Lewis Bart Stone, J.), rendered November 13, 2012, convicting defendant, after a jury trial, of assault in the first degree (two counts), assault in the third degree and attempted assault in the third degree, and sentencing him to an aggregate term of 15 years, unanimously affirmed.

Defendant received effective assistance of counsel (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *Strickland v Washington*, 466 US 668 [1984]). Defendant has not shown that any of counsel's alleged deficiencies fell below an objective standard of reasonableness, or that, viewed individually or collectively, they deprived defendant of a fair trial or affected the outcome of the case. Initially, we note that defendant raised some of his ineffective assistance claims in an unsuccessful CPL 440.10 motion, and his motion for leave to appeal to this Court was denied. Accordingly, while all of defendant's claims are still cognizable on direct appeal, our review is limited to the trial record (*see People v Evans*, 16 NY3d 571, 575 [2011]), which does not support a finding of ineffective assistance.

Defense counsel was confronted with the difficult task of raising a doubt on the issue of identity despite overwhelming evidence. At trial, all four eyewitnesses described defendant as wearing a distinctive hat, and three of the eyewitnesses identified him in court. Defendant was wearing the distinctive hat when he was arrested, which corroborated the witness's descriptions, and there was little counsel could do to challenge this fact, through expert testimony on cross-racial identifications or otherwise, as defendant argues he should have done. Their testimony was further corroborated by the facts that an MTA worker regularly saw defendant wearing the hat several times a week in the subway station where the crime occurred, and that he was wearing it two weeks prior to the instant incident when he was arrested for a separate offense inside the same station. Workers at that station saw defendant so often that they even had a nickname for him based on the distinctive hat.

Similarly, the decision to have defendant testify, notwithstanding the possibility that he could be impeached with his prior inconsistent alibi, was an objectively reasonable strategy, as the People's case would have otherwise gone unrefuted. The record does not conclusively show that defense counsel misapprehended the law regarding impeachment of defendant's testimony with the prior inconsistent notice of alibi, and the court in any case ruled that he could be so impeached before defendant took the stand. Thus, defense counsel was able to meaningfully advise defendant on the potential adverse consequences of taking the stand.

We have considered and rejected defendant's remaining ineffective assistance claims to the extent the trial record permits review of those claims.

Defendant's arrests for fare beating in the same subway sta-

tion 13 and 15 years before the charged crimes should have been excluded because their potential for prejudice exceeded their probative value on the issue of identity (*see generally People v Ely*, 68 NY2d 520, 530 [1986]). However, any error was harmless, because evidence of defendant's guilt was overwhelming, and there was no significant probability that these arrests for minor nonviolent offenses affected the outcome of the trial.

We perceive no basis for reducing the sentence. Concur—Sweeny, J.P., Andrias, Manzanet-Daniels, Gische and Webber, JJ.